UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION

| | | |
|---|---|---|
| IN RE: | ) | Chapter 7 |
| | ) | |
| GARY LEE HARMON, | ) | Case No. 08-09999-AJM-7A |
| | ) | |
| Debtor. | ) | |
| | ) | |
| BRIAN L. WHITESELL, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Adversary Proceeding 08-50643 |
| | ) | |
| GARY LEE HARMON, SAMUEL TRAFELET, and WACHOVIA BANK NATIONAL ASSOCIATION, | ) ) ) | |
| | ) | |
| Defendants. | ) | |

## WACHOVIA BANK, NATIONAL ASSOCIATION'S TRIAL BRIEF

### INTRODUCTION

This case is about a real estate deal gone bad. Brian Whitesell ("Whitesell"), Gary Lee Harmon ("Harmon"), and Samuel Trafelet ("Trafelet"; together with Whitesell and Harmon, the "Parties") agreed to purchase real estate located at Lot 91, the Conservatory, Palm Coast, Florida 32137 (the "Real Estate") as a joint investment. The Parties' end game was profit, and none were strangers to real estate speculation. Whitesell himself had been a party to some fifteen real estate transactions since 2000. But the downturn in the real estate market hit Florida especially hard, and the Real Estate proved a poor investment. Harmon and Trafelet have filed for bankruptcy protection in large part due to their real estate speculation. Whitesell, however, asks that this court extricate him from his investment rather than accepting responsibility for a real estate venture he willingly and knowingly entered. Specifically, Whitesell seeks a

1

declaratory judgment that his signature on the Note (defined below) is a forgery, thereby avoiding any liability on the Loan (defined below).

Wachovia Bank, National Association ("Wachovia") is a party to this adversary proceeding because it issued the loan (the "Loan") to the Parties in the original principal amount of $362,599.25 and took a mortgage on the Real Estate (the "Mortgage").  Wachovia will show that Whitesell is not entitled to renege on his obligations because he ratified his signature on the Note.  Further, Wachovia will show that Trafelet's liability under the Note is nondischargeable pursuant to the fraud exception of 11 U.S.C. § 523(a)(2)(A).

Wachovia should not pay the price for a real estate venture gone bad and in-fighting among business partners.  It made the Loan, and the proceeds were used to purchase the Real Estate.  No payments have been made on the Loan since April of 2008, and Wachovia should be allowed to pursue its remedies against the Parties in accordance with the loan documents.[1]

## JURISDICTION AND VENUE

This Court has jurisdiction over the Adversary Proceedings pursuant to 28 U.S.C. §§157 and 1334 and 11 U.S.C. §§523 and 727.  Venue is proper in this district pursuant to 28 U.S.C. §§1408 and 1409.

## PROCEDURAL HISTORY

On August 18, 2008, Harmon filed his voluntary petition under Chapter 7 of the United States Bankruptcy Code under Case No. 08-09999-AJM-7.  On December 8, 2008, Whitesell filed a complaint under Adversary Proceeding No. 08-50643 (the "Harmon

---

[1] Early in this case, the Parties agreed with Wachovia that Wachovia would not pursue any action on the Note and Mortgage until such time as the matters before this Court are decided.

2

Adversary") seeking nondischargeability of Harmon's personal liability under §523(a)(2) and injunctive and declaratory relief that the signature on the Note is a forgery.

On January 23, 2009, Trafelet filed his voluntary petition under Chapter 7 of the United States Bankruptcy Code under Case No. 09-00670-AJM-7. On April 8, 2009, Wachovia filed its Complaint to Determine Dischargeability under §523(a)(2)(A) and §523(a)(4) against Trafelet under Adversary Proceeding No. 09-50233 (the "Wachovia Adversary"). On April 24, 2009, Whitesell filed his Complaint seeking nondischargeability under §523(a)(2) against Trafelet and injunctive and declaratory relief that the signature on the Note is a forgery under Adversary Proceeding No. 09-50256 (the "Trafelet Adversary").

On June 29, 2009, the Parties filed their Agreed Motion to Consolidate Adversary Proceedings and Approve Pre-Trial Order (the "Consolidation Motion"). On July 8, 2009, the Court approved the Consolidation Motion, and the Trafelet Adversary and the Wachovia Adversary were consolidated into the Harmon Adversary.

## FACTS

Sometime in early 2005, the Parties submitted a loan application to Wachovia for the purpose of purchasing the Real Estate. The Parties agreed to be equal co-owners of the Real Estate with equal obligations to repay the underlying debt and an equal interest in the expected profits. From 2005 through April of 2008, the Parties made payments of principal and interest on the Loans. At some point in 2007, Whitesell claims that he learned that he was the sole obligor under the Note and that Harmon and Trafelet were guarantors. This, Whitesell claims, is contrary to the arrangement to which he agreed. Whitesell corroborates these claims with emails to Harmon dated September 26, 2007 and October 8, 2007, in which Whitesell expresses concern about the structure of the deal. Regardless of this concern, Whitesell continued to contribute his

portion of the principal and interest payments through April of 2008. He made no effort to disavow his liability under the Note until after Harmon filed for bankruptcy protection and it became clear that Whitesell might experience financial repercussions rather than a financial windfall. Shortly after Whitesell filed the complaint in this matter, Trafelet also filed for bankruptcy protection.

## ISSUES FOR TRIAL

There are numerous issues for trial, but Wachovia is only a direct participant in two:

1. Whether Whitesell ratified the signature on the Note.

2. Whether Trafelet's actions constitute a violation of 11 U.S.C. § 523(a)(2)(A), such that his debt to Wachovia should be declared nondischargeable.

## BURDEN OF PROOF

Wachovia has the burden to establish the elements of ratification, as an affirmative defense, by a preponderance of the evidence. *James River Ins. Co. v. Kemper Cas. Ins. Co.*, 585 F.3d 382, 385 (7th Cir. 2010) (defendant bears the burden of proof on an affirmative defense); *Caesars Riverboat Casino, LLC v. Kephart*, 934 N.E.2d 1120, 1125 (Ind. 2010) (proponent of affirmative defense bears the burden of proof); *City of Delphi v. Startzman*, 3 N.E. 937, 939 (Ind. 1885) (noting that ratification and estoppel are affirmative defenses). Wachovia can meet its burden on this issue due to Whitesell's undisputed actions and knowledge of the transaction.

A bankruptcy court applies a preponderance of the evidence standard when making dischargeability determinations under § 523(a). *Ojeda v. Goldberg,* 599 F. 3d 712, 716 (7th Cir. 2010). Wachovia can satisfy this standard on the basis of Trafelet's own admissions.

4

**DISCUSSION**

A.  **Whitesell accepted the benefits of the Note with full knowledge of the material facts.**

Even if Whitesell can meet his burden and show the signature on the Note not to be his own, his acts subsequent to his September 26, 2007 email constitute ratification of the signature on the Note.  As a general rule, if an individual with full knowledge of all material facts takes and retains the benefits of an authorized act, that person thereby ratifies such act, with the liabilities and burdens resulting therefrom.  Indiana courts have broken this rule into three elements: "(1) an unauthorized act performed by an individual for and on behalf of another and not on account of the actor himself; (2) knowledge of all material facts by the person to be charged with said unauthorized act; and (3) acceptance of the benefits of said unauthorized act by the person charged with the same." *Am. Heritage Banco, Inc. v. Cranston*, 928 N.E.2d 239, 249 (Ind. Ct. App. 2010).  This rule is materially the same from jurisdiction to jurisdiction.  Florida, for example, requires an affirmative intent to approve the unauthorized act and knowledge of the act.  *See Stalley v. Transitional Hosp. Corp. of Tampa, Inc.*, 44 So.3d 627, 631 (Fla. Dist. Ct. App. 2010).[2]

Here, Whitesell only sought to repudiate the allegedly unauthorized act when it became apparent that (i) his business partners faced bankruptcy and (ii) the investment in the Real Estate was a poor decision.  Whitesell cannot now seek to entirely avoid liability on the Note when he has accepted the accompanying benefits with full knowledge of the transaction.

    1.  **The signature on the Note was made on Whitesell's behalf.**

When structuring the transaction, the Parties all agreed to be "equal co-owners of the Real Estate each with equal obligations to repay the underlying debt."  To be an "equal co-

---

[2] The Note and Mortgage are governed by Florida law.

owner of the Real Estate," a sophisticated businessman with significant experience in real estate transactions, such as Whitesell, would (or should) know that ownership of real estate involves the execution of paperwork and personal signatures. Whitesell, however, claims that he did not sign any paperwork on this particular transaction, but still contributed one-third of the principal and interest payments on the Note. His signature, therefore, was placed on the Note and other loan documents on his behalf to consummate a transaction of which he was aware. Whitesell's own complaint verifies that he intended to be bound under the Note, and he confirmed this in his deposition:

> Q:    Is that language in your pleading correct? Did you agree to be equal owners of the real estate and you would each have equal debt?
>
> A:    Alongside Harmon, yes, all three of us.
>
> Q:    You, Mr. Harmon and Mr. Trafelet would each carry the debt equally, correct?
>
> A:    Correct.

Further, Whitesell cannot argue that Harmon and Trafelet intended to defraud him and solely obligate him on the Note. This was no ordinary case of forgery where the forger neither pretends nor intends to act on behalf of the proposed ratifier. In fact, Harmon and Trafelet obligated themselves as guarantors of the Note in furtherance of the Parties' investment.[3] Whitesell's signature was placed on the Note in furtherance of the business transaction to which the Parties agreed.

---

[3] As the Note provides for joint and several liability for all signatories, the difference between how the Note was actually executed (with Harmon and Trafelet as guarantors) and how the Note was to be executed (with Harmon and Trafelet as co-obligors) is of little significance.

6

### 2. Whitesell had knowledge of all material facts.

In order to be bound by ratification, Whitesell must have had knowledge of the material facts surrounding the transaction and must have acted in light of such knowledge. *Am. Heritage Banco, Inc. v. Cranston*, 928 N.E.2d 239, 249 (Ind. Ct. App. 2010). Material facts are those which substantially affect the existence or extent of the obligations involved in the transaction. *See* Restatement (Second) of Agency § 91 (2010). Further, some jurisdictions have reasoned that where ignorance of the facts arises from an individual's failure to investigate and the circumstances are such as to put a reasonable person upon inquiry, that individual may be held to have ratified despite lack of full knowledge. *See Volandri v. Hlobil*, 339 P.2d 218, 221-220 (Cal. App. 1959) (defendant possessing knowledge that plaintiff held a note purporting to have been signed by him and his subsequent failure to make further inquiries was held to have ratified despite lack of full knowledge).

Whitesell had full knowledge of all material facts by no later than October 8, 2007, in which he stated, "I called Wachovia today and I am the only one on the note and mortgage." A prior September 26, 2007 email from Whitesell to Harmon reveals that Whitesell at least suspected that he was the only borrower under the Note. An email dated November 26, 2007 indicates that Whitesell made a payment covering July, August, and September and acknowledged that he owed for the October, November, and December payments. Whitesell wrote check number 2826 to Trafelet on December 13, 2007, and the memo line reads, "Oct / Nov / Dec." Further, Whitesell wrote check numbers 2842, 2871, 2904, and 2896 to Wachovia on January 15, 2008, February 19, 2008, March 17, 2008, and April 15, 2008, respectively. Each check was for $1,753.17, the same monthly payment amount owed under the Note. Many courts have specifically found that making continued payments after learning of potential grounds for

7

voiding a contract is sufficient to satisfy this element of ratification. *Wilcox Mfg. Grp., Inc. v. Mktg. Servs. of Ind., Inc.*, 832 N.E.2d 559, 563 (Ind. Ct. App. 2005) (corporation ratified loan agreement signed by its incapacitated president because president regained his capacity well before cessation of monthly payments); *accord Gibbs v. SLM Corp.*, 336 F. Supp. 2d 1, 8 (D. Mass. 2004) (plaintiff ratified loan agreement allegedly signed under duress by making payments); *Jones v. Watkins*, 140 So. 920, 920 (Fla. 1932) (payment of money precludes the need for an express ratification); *Richards v. Arthaloney*¸ 342 N.W.2d 642, 649-50 (Neb. 1983) (by acknowledging the debt, and making payments with no objection, the defendant ratified and authorized the signature on a note and could not later complain); *Bobby Floars Toyota, Inc. v. Smith*, 269 S.E.2d 320, 323 (N.C. Ct. App. 1980) (minor purchaser continued to make monthly payments on an automobile beyond his 18th birthday and could not subsequently disaffirm note).

Rather than repudiate the entire transaction when the material facts came to light, Whitesell made the above-referenced payments with full knowledge that he was the only borrower listed on the Loan and that Harmon and Trafelet were guarantors. Rather than disavow a transaction that varied from the initial agreement as he claims to have understood it, Whitesell kept contributing. Any subsequent attempt to avoid the entire transaction—a transaction he does not dispute he agreed to be "one-third" liable for at the outset—should be denied.

### 3. Whitesell ratified the Note via silence and his acceptance of the benefits of the Note.

Whitesell ratified his signature by his failure to act for fourteen months after learning of the alleged forgery and by his continued participation in the deal. In Indiana, the unauthorized acts of another may be ratified "through silence and acceptance of the benefits attaching to such acts." *Beneficial Mrtg. Co. of Ind. v. Powers*, 550 N.E.2d 793, 796 (Ind. Ct.

App. 1990); *accord Vargas Realty Enter., Inc. v. CFA W. 111 St., L.L.C. (In re Vargas Realty Enter., Inc.)*, 440 B.R. 224, 235 (S.D.N.Y. 2010).

Upon learning of potential grounds for repudiation of the Note, Whitesell had a duty to disavow and repudiate it in a reasonable time in order to avoid responsibility for the accompanying liability. *Clews v. Jamieson*, 182 U.S. 461 (1901). Whitesell knew he was the sole signatory as early as October of 2007, yet he inexplicably did not file suit until December of 2008. In some jurisdictions, this unreasonable lapse of time between the discovery that he was the sole signatory and his action on such knowledge may be enough to simply presume ratification. *See Hendrix v. First Bank of Savannah*, 394 S.E.2d 134, 136 (Ga. Ct. App. 1990) (failing to take action for eight months after discovery of the forgery may be enough to presume ratification).

Further, in jurisdictions that have considered the issue, a reasonable time within which to repudiate does not mean that an individual is permitted to await some future event, with the purpose of adopting the unauthorized act if the transaction to which it relates proves a paying one, and, if not, of rejecting it. *Rakestraw v. Rodrigues*, 500 P.2d 1401, 1406 (Cal. 1972) ("It thus appears as a matter of law that [the cross-claimant] affirmatively endorsed the fraudulent acts of [the plaintiff and the defendant] in anticipation of benefits to be gained, and sought to negate her indorsement [sic] only when benefits failed to materialize as anticipated."); *United Fuel Gas Co. v. Jude*, 355 S.W.2d 664, 667 (Ky. 1962) ("Where a party has the right to disavow, he can not [sic] delay the exercise of the right to determine whether avoidance or affirmance of an act would be more profitable to him. This is particularly true where the transaction is one of a speculative nature."); *Sullivan v. Bennett*, 246 N.W. 90, 92 (Mich. 1933) ("The customer should not have the privilege of withholding approval or disapproval until the market has taken a turn

9

for better or for worse, and then assuming the position which turns out the more profitable."). Likewise, Whitesell should not be permitted to delay in deciding whether to affirm or repudiate the Note until he is able to determine which course is the most profitable.

In jurisdictions that have considered the issue, use of the property is a sufficient benefit to amount to ratification. *See, e.g.*, *Fitzgerald v. Union Centr. Life Ins. Co.*, 42 F.2d 76, 78 (8th Cir. 1930) (noting that the party seeking to avoid the mortgage had the use and benefit of the property and cannot now contend that the mortgages were void *ab initio*); *Got-It Hardware & Gifts, Inc. v. City of Ashburn*, 270 S.E.2d 380, 381 (Ga. Ct. App. 1980) ("One who accepts possession of goods and permits them to be used for his benefit cannot defeat an action for the purchase price by denying that the person who purchased them had authority to act as his agent."). Here, the Real Estate was used as an investment. Whitesell knew he was the sole owner of the Real Estate, yet he continued to accept two-third payments from his co-investors and continued to treat it as an investment until it became clear that his investment would not yield a profit. He never disavowed the transaction. He never quit-claimed a portion of the property to Harmon and Trafelet. Presumably, he would have accepted any profit made from the sale of the Real Estate. Whitesell cannot now claim that he is not liable under the Note and Mortgage after accepting the full benefits of the deal.

### B. Trafelet's guaranty is nondischargeable in bankruptcy under the fraud exception.

All debts "arising out of fraud" are excepted from discharge pursuant to 11 U.S.C. § 523(a)(2)(A). *Archer v. Warner*, 538 U.S. 314, 321 (2003). The exception applies to "an extension . . . of credit, to the extent obtained, by – (A) false pretenses, a false representation, or actual fraud. . ." 11 U.S.C. § 523(a)(2). To prove actual fraud under section 523, Wachovia must establish, by a preponderance of the evidence, that (i) the debtor made a false representation or

10

omission upon which the creditor justifiably relied; (ii) that the debtor knew such representation to be false or made such representation with reckless disregard for the truth; and (iii) that such representation was made with the intent to deceive. *Ojeda,* 599 F.3d at 717.

Here, Wachovia can prove the elements of actual fraud by a preponderance of the evidence regardless of whether Whitesell ratified the unauthorized signature. In a voicemail left for Whitesell, Trafelet admits that he signed Whitesell's name to documents. Trafelet, then, made a misrepresentation to Wachovia and either (i) held himself out to have the authority to sign Whitesell's name to the loan documents or (ii) claimed to be Whitesell.

As there was no power of attorney between Whitesell and Trafelet, Trafelet would also have known that he did not have the authority to sign Whitesell's name to the loan documents. Harmon and Trafelet believed that they had too many other loans with Wachovia, and they structured the Loan as they did (and Trafelet signed Whitesell's name to the loan documents) to circumvent a Wachovia policy limiting the number of loans on which a person could be primary borrower. Intent to deceive "may be logically inferred" when the misrepresentation was made for the purposes of inducing another to issue a loan. *Carini v. Matera¸* 592 F.2d 378, 380 (7th Cir. 1979).

Finally, Wachovia justifiably relied on the loan documents as executed when approving the Loan, finalizing the Loan and delivering the proceeds. "Under the justifiable reliance standard, a creditor has no duty to investigate unless the falsity of the representation would have been readily apparent." *Ojeda,* 599 F.3d at 718 (citing *Field v. Mans*, 516 U.S. 59, 70-71 (1995)). As Wachovia had no reason to suspect that the signatures at issue did not belong to Whitesell, Wachovia was under no duty to verify the authenticity of the signature. Consequently, Wachovia justifiably relied on the signature in issuing the Loan.

BDDB01 6698178v4

Trafelet obtained the Note through fraudulent means and, in accordance with the intent of §523(a)(2)(A), his obligations under the Note should not be entitled to the bankruptcy relief afforded to honest debtors.

## CONCLUSION

Whitesell cannot avoid his obligation under the Note because he has ratified his signature by accepting the benefits of the Note and Mortgage with full knowledge of the material facts.

Trafelet's guaranty is nondischargeable in bankruptcy under the actual fraud exception, and Wachovia is entitled to a judgment accordingly. Wachovia justifiably relied to its detriment on Trafelet's misrepresentation, and Trafelet should not now be able to find relief from an obligation fraudulently obtained.

Respectfully submitted,

BAKER & DANIELS LLP

By: /s/ Louis T. Perry
Louis T. Perry, Attorney No. 25736-49

*Attorneys for Defendant Wachovia Bank, N.A.*

Louis T. Perry
Kayla D. Britton
Baker & Daniels LLP
300 North Meridian Street, Suite 2700
Indianapolis, IN 46204
Telephone: (317) 237-0300
Facsimile: (317) 237-1000
louis.perry@bakerd.com
kayla.britton@bakerd.com

## CERTIFICATE OF SERVICE

I hereby certify that on June 3, 2011, a copy of the foregoing pleading was filed electronically. Notice of this filing will be sent to the following parties through the Court's Electronic Case Filing System. Parties may access this filing through the Court's system.

| | | |
|---|---|---|
| Nathan William Gooden<br>ngooden@redmanludwig.com | U.S. Trustee<br>ustpregion10.in.ecf@usdoj.gov | Kayla D. Britton<br>kayla.britton@bakerd.com |
| Brooks J. Grainger<br>bankruptcy@krisorlaw.com | Harley K Means<br>hkm@kgrlaw.com | Louis T. Perry<br>louis.perry@bakerd.com |
| James G. Lauck<br>jgl@kgrlaw.com | Steven Eric Runyan<br>ser@kgrlaw.com | |

/s/ Louis T. Perry

BDDB01 6698178v4